Opinion of
the Court.
IN detinue for certain slaves, the jury found for the appellee. A new trial was moved for, and the court were divided in opinion, by which the motion failed, and judgment was rendered upon the verdict. A bill of exceptions was taken, in which the testimony is spread upon record; and now the only question arises out of that bill of exceptions to the overruling of the motion for a new trial.
The appellant relies, that the appellee ought not to have had judgment, because it appeared, as he supposes, 1st, that the slave, Cass, and her increase, were the property of an idiot, one of the co-heirs of Salathiel Cole, sen. deceased, who lived with Wiley, the testator of the appellee, who married the mother of said idiot; or, if the slaves were not the property of said idiot, yet, 2dly, that they were the property of the co-heirs of the said Salathiel Cole, sen. The appellant married one of the co-heirs, and is agent, by power of attorney, for the others; so that the plaintiff had failed to make out a title, and the appellant ought to be permitted to retain the slaves.
As to the first point, the evidence is by no means sufficient to induce a belief that Cass, the mother of the other slaves in controversy, was the property of the idiot, or allotted to him in the division and distribution of Cole’s estate. Indeed, the deposition of Ogden says, that upon making a division of the estate, some altercation took place; it was at length agreed, that the said Sarah (the widow of Cole, and afterwards the wife of Wiley,) should take the said girl, Cass, on account of a helpless child, by the name of Salathiel Cole. But the widow was entitled to her dividend of the estate of her deceased husband, and in the division the circumstance of her having the care and anxiety of providing for, and superintending the helpless idiot, surely gave a mother an additional claim to be accommodated in the distribution. That the widow was permitted to take Cass, as so much of her distributive share, by reason of her expected trouble with the helpless child, Salathiel, is a more rational construction of the deposition, than that the mother was permitted to take the slave as the *48 guardian of the child. The former construction is also corroborated by other evidence in the cause.
A person to whom the personal estate of an infant has been delivered over, with the approbation of a court of a neighboring state, having competent jurisdiction of such matters, will be presumed, in this country, to have been a guardian or otherwise vested with legal authority to receive, although the record is silent as to any such character or authority.
As to the second, it is to be remarked, that Cole died in the state of Maryland; that administration cum testamento annexo, was committed to Sarah, the widow; that shortly after, she intermarried with Walter Wiley; that he settled the administration, accounted for the whole amount and appraised value of the estate, before the orphan’s court, or upon a commission issued from said court; which account was passed, registered, &c. and is now duly certified. It appears the slave Case was included in the inventory and appraisement, and that Wiley was, in Maryland, possessed of, and the reputed owner of Cass, and remained in possession of her and her increase, in this state, until the death of his making upwards of twenty years’ quiet possession. The wife died shortly after the idiot child, and soon after her death, the negro disappeared, and were found in possession of the appellant, who refused, upon demand, to give them up.
Upon looking into the statute laws of Maryland, according to the agreement of the parties certified in the record, we find that slaves are assets in the hands of executors and administrators; that it belongs to the orphan’s court to receive, settle and pass their accounts, to order partial distribution in certain cases, and in case the surplus remaining in the administrator’s hands after payment of all just debts exhibited and proved, or notified and not barred, or after retaining for the same, shall consist of specific property or articles mentioned in the inventory or inventories, the administrator, if he cannot satisfy the parties, may apply to the court to make distribution, and the court may appoint a day, &c. and by summons call upon the parties, &c. and proceed to make distribution, &c. The said court has also the power to make an appointment of a guardian for an infant entitled to an estate, where he hath no natural or statutory guardian, or guardian appointed by last will; which appointment, in case of personal estate, may be made, as the court shall think proper, either before or after the executor or administrator shall have passed his account. In the account settled and passed by the commission issued from the court, we find the shares of the respective distributes are all taken into view, and also the widow’s part ex *49 pressly mentioned, as well as the proportion paid to Stephen Price for the use of Salathiel, Micajah and Aquila Cole, in full of their parts of the estate. Price is not stated to be the guardian of those persons; but we must presume the authority to receive, was made out, otherwise the item would not have been passed. This settlement was made in the month of February, 1790, thirteen or fourteen years before the appellee’s testator was disturbed in his possession of Cass and her increase. When we consider that this transaction took place in Maryland; that the account of the administrator includes the whole estate, at its appraised value; that this account was passed by a court having competent and general jurisdiction over executors, administrators, infants, and distribution of the estates of decedents; that both parties claimed the slaves as a part of the estate whereof Salathiel Cole, sen. died possessed; that the length of possession adverse to the appellant and those for whom he claims, is not accounted for by any proof that the slave Cass was allotted or distributed, in the division of the decedent’s estate, to the idiot; that, according to the inventory, a slave could not have been furnished to each distributee, and that Cass must have been sold, and her value divided, or she given to one, and an equivalent to the others; that to satisfy the distributees, or those representing them, was all that was required, by the laws of Maryland, of the administrator, whose duty it was to make distribution, we think the appellee ought to have had a judgment in the action. But we are clear, that after a jury have weighed the testimony, and pronounced upon it in favor of the plaintiff in the action, the bill of exceptions does not furnish sufficient cause to set aside the verdict of the jury.